FRANK LESHIN, Respondent, *v.* NAVARRO OPERATING Co., INC., and 112 CENTRAL PARK SOUTH, INC., Appellants.

First Department, December 1, 1939.

*George J. Stacy* of counsel [*James J. Mahoney* with him on the brief], for the appellants.

*Harold Ira Panken* of counsel [*Pearl H. Weinberger*, attorney], for the respondent.

GLENNON, J.  Plaintiff rented an apartment in the Hotel Navarro from the defendant Navarro Operating Co., Inc.  The latter leased the building from defendant 112 Central Park South, Inc., the owner.  The building was twenty-six stories in height.  It was operated as an apartment hotel.  There was a flat tile roof, about fifty by seventy-five feet in area with a parapet wall around it, on the top of the building.  Access to the roof could be had by riding in a passenger elevator to the twenty-fifth floor and thence by walking up one flight of stairs.

Some of the tenants, including the plaintiff, made it a practice of sunning themselves in beach chairs which were located on the roof.  These chairs, according to the undisputed testimony of the manager of the hotel, belonged to the tenants.  In fact, prior to the happening of the accident, which occurred on June 23, 1935, plaintiff testified that he had purchased a beach chair for his own use and placed it on the roof.

The plaintiff had been convalescing from an automobile accident which had occured on May eleventh, and used the roof very frequently for the purpose of sunning himself.  Prior to the time he purchased his own chair he was accustomed to use those which he found upon the roof.  He asserted that about ten or twelve days before the accident he notified the manager of the hotel that some of the chairs were not " fit to sit in and looked too dilapidated and too old."  He quoted the manager as saying that he would take care of it.

He used the roof on the morning of the accident and after lunch he returned in company with a Miss Pond, who testified on his behalf at the trial.  He found that his own chair was being used by a lady who appeared to be asleep.  He noticed a bell boy who was " delivering papers or something " upon the roof.  He admitted, however, that there was no boy usually in attendance.  He asked the bell boy to set up a chair for him and the latter did so and left the roof.  He said, " When I went to sit down in the chair I was particularly careful about beach chairs anyhow, and I wanted to see whether this chair was in the notches, and when I sat down it simply collapsed."  As a result of the collapse his thumb was very severely injured.

The manager of the hotel said, in substance, that he did not remember plaintiff's complaint to him about the chairs and further

that he had no recollection that he said to plaintiff that he would take care of them.

We know of no obligation on the part of the hotel management to see to it that the chairs, which belonged to the tenants and which had been left upon the roof for their own use, should be kept in good repair. Of course, the operating company could have made a rule prohibiting tenants from using the roof. Nevertheless, upon its failure to do so, it cannot be held liable for hidden defects, if any, which may have existed in the chairs which were owned by the tenants.

A somewhat similar situation, wherein a chair of the type now under consideration collapsed, was presented in the case of *Liedeker* v. *Sears, Roebuck & Co., Inc.* (249 App. Div. 835; affd., 274 N. Y. 631). An examination of the record in that case indicates that the chair had been set up by the defendant Sears, Roebuck & Co., Inc., for the use of its customers on a gravel walk in a garden laid out and maintained by it in connection with its business. The plaintiff in that case was invited by the dealer's salesman to sit in the chair. She did so and it collapsed. She had a recovery at Trial Term. Upon appeal the majority of the court in the Appellate Division in its memorandum decision said in part: " In our opinion neither defendant is liable on the theory of negligence or breach of an implied warranty. The chair was not inherently dangerous and the manufacturer is not liable because of the fact that it is possible for one using the chair to be injured. All that the manufacturer is required to do is to guard against injury that is reasonably probable." (See, also, *Pickard* v. *Woolworth Co.,* 256 App. Div. 963; affd., 280 N. Y. 816.) Here, as we have seen, the chair which caused injury to the plaintiff was not the property of the defendant Navarro Operating Co., Inc., but rather of one of its tenants.

It should be noted further that there is nothing in the record to indicate the cause of the collapse of the chair. Manifestly, the doctrine of *res ipsa loquitur* did not apply, and, consequently, the burden rested upon the plaintiff to prove in detail the cause of the collapse. This he failed to do.

For the reasons assigned, we have reached the conclusion that no cause of action was made out either against the Navarro Operating Co., Inc., or the 112 Central Park South, Inc., and, consequently, the complaint should have been dismissed.

The judgment should be reversed, with costs, and the complaint dismissed, with costs.

MARTIN, P. J., UNTERMYER, DORE and CALLAHAN, JJ., concur.

Judgment unanimously reversed, with costs, and the complaint dismissed, with costs.